**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALDO SOSA SALAZAR,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| **v.** | : | **NO. 26-cv-07608** |
| **WARDEN J.L. JAMISON, et al.,** | : | |
| **Respondents.** | : | |

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner Aldo Sosa Salazar's Petition for Writ of Habeas Corpus (ECF No. 1). Upon consideration of the Petition, Petitioner's Supplement (ECF No. 3), the Government's Responses thereto (ECF Nos. 7 & 11), and the arguments and representations of counsel at a hearing held before this Court on October 16, 2026, and for the reasons stated by the Court on the record during that hearing and further memorialized in this Memorandum Opinion, the Petition is denied as follows, and counsel for Petitioner is ordered to show cause as to why the representations made to the Court in this matter do not violate Fed. R. Civ. P. 11(b)(3) and/or Pa. R. P. C. 3.3(a)(1).

## I. BACKGROUND

On October 2, 2026, Petitioner filed his Petition in this action, along with a verification of counsel pursuant to 28 U.S.C. § 2242. In his Petition, Petitioner asserted that, on September 29, 2026, Petitioner was arrested on his way to work. ECF No. 1, ¶¶ 1, 19. According to Petitioner, immigration officials were not aware of his presence at that time, did not have any information about him before his arrest, and "did not present [Petitioner] with a warrant before taking him into custody or an individualized custody determination." *Id.* at ¶¶ 1-2, 19. The Petition contends that his warrantless arrest violates the Due Process Clause of the Fifth Amendment, as well as the laws

and regulations regulating when a noncitizen may be arrested for potential immigration violations and governing the issuance of immigration warrants. The Petition, however, also closely resembled other petitions filed in this Court, and contained text reflecting that it was prepared using a template with limited revision. For example, on page 21 of the Petition, in paragraph h of the Prayer for Relief, the verbiage includes an apparent set of in text instructions that were not excised from the Petition prior to filing, as well as an erroneous citation to the applicable law.

> h) **[IF FEDERAL DEFENDER OMIT EAJA FEES]** Award Petitioner his costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and any other basis justified under law, *see Michelin v. Warden Moshannon Valley Corr. Ctr.*, 1669 F.4th 418 (3d Cir. 2026 (sic); and

ECF No. 1, at 21.[1]

On October 5, 2026, upon consideration of the Petition, the Court entered an Order which, in relevant part, ordered Petitioner to "file a supplement to the Petition which identifies (1) if a warrant was issued for the Petitioner concurrently with or subsequently to the Petitioner's detention; and (2) if the Petitioner has sought or will seek a bond hearing under 8 U.S.C. § 1226(a)." ECF No. 2, at 1 (the "October 5 Order").

On October 7, 2026, Petitioner, through counsel, filed a supplement which read, in relevant part: "In speaking with petitioner at the Federal Detention Center, undersigned counsel's colleague confirmed Petitioner did not have in his possession any warrant or other immigration paperwork. Without the official documents, undersigned counsel is unable to say with certainty, but it seems a warrant, **<u>if any</u>,** was issued after Petitioner was detained." ECF No. 3, at 1 (emphasis added) (the "Supplement"). The Supplement further stated that Petitioner had yet to seek a bond hearing, but planned to do so. *Id.*

---

[1] The correct citation is *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418 (3d Cir. 2026).

Respondents filed a timely response to the Petition on October 9, 2026. ECF Nos. 2, 5, & 7. In that response, the Government clarified that ICE confirmed Petitioner's identity, alienage, and removability upon his arrest, and served Petitioner with a Notice to Appear. ECF No. 7, at 3; ECF Nos 7-1 (Form I/862, Notice to Appear) & 7-2 (Form I-213, Record of Deportable/Inadmissible Alien). Petitioner was also served with an arrest warrant, received a custody determination (that he should be detained), and offered the opportunity to request a bond hearing before an immigration judge under 8 U.S.C. § 1226(a). *See* ECF No. 7, at 4; *see also* ECF No. 7-3 (Warrant for Arrest of Alien); ECF No. 7-4 (Notice of Custody Determination). The record further reflects that Petitioner refused to sign the Notice of Custody Determination. ECF No. 7-4, at 2. Petitioner was scheduled for a hearing before an immigration judge regarding his proposed removal on October 26, 2026. *See* ECF No. 7-5 (Notice of Hearing).

In further support of the Response, Respondents filed the "Declaration of Deportation Officer Kayla Brown" on the morning of October 16, 2026. *See* ECF No. 11. Officer Brown stated in her declaration that, on September 29, 2026, ICE agents encountered Petitioner during an enforcement operation targeting another individual, in which that individual was observed getting into a vehicle at his known address. *Id.* at p. 5, ¶ 3. Petitioner was the driver of the vehicle and was identified by his Mexican consular ID card. *Id.* During questioning in the course of the traffic stop, Petitioner stated he had no legal status in the United States, his parents were natives and citizens of Mexico, he had no children in the United States, and he was driving without a license. *Id.* at p. 5, ¶ 4. Officer Brown's declaration additionally noted that Petitioner had previously been processed under Title 42 and expelled from the United States on or about May 12, 2022. *Id.* at p. 5, ¶ 2. Following questioning, and also based in part on the Title 42 return, ICE concluded

Petitioner was likely to escape and was therefore detained and taken to the Philadelphia Field Office where he was proceed and served a completed I-200. *Id.* at pp. 5-6, ¶¶ 4-6.

On October 16, 2026, the Court held a hearing, during which the Petitioner was present with counsel who was different from the attorney who signed the Petition and Petitioner's Supplement (but a member of the same law firm). During the hearing, Petitioner and his counsel did not contest the existence of a warrant issued after his arrest or the validity of the Government's factual representations. Rather, Petitioner (through counsel) agreed that this was an instance in which the dispute between the parties reduced to the question of whether the post-arrest process and documentation afforded to Petitioner is legally sufficient – rather than a case in which Petitioner contended that he did not receive such process and documentation at all.

In light of this agreement, and the extensive record produced by the Government, the Court inquired into how the averments in the Petitioner's Supplement came to be. In the Court's view, the October 5 Order's language was unambiguous and requested the Petitioner to confirm whether a warrant was issued "concurrently with or subsequently to the Petitioner's detention." *See* ECF No. 2, ¶ 3. The Court further found that Petitioner's Supplement, filed by counsel, was at best careless, and at worst affirmatively misleading in as much as it suggested that no warrant might exist. *See* ECF No. 3, at 1 ("it seems a warrant, **if any,** was issued after Petitioner was detained.") (emphasis added).

The Court explained that, when it entered the October 5 Order, the Court was concerned by the apparently limited nature of the factual investigation conducted by Petitioner's counsel, and the potential lack of attention to the preparation of the Petition as evidenced by the bracketed instructions that remained in the Petition and limited factual allegations relating to the case at bar. The Court further explained that, while the Court is aware of decisions by members of the Court

taking different approaches to the legal issues presented in the form petition on which the Petition was based, the case at bar bore significant similarities to the matter of *Zhuno-Livicura v. Jamison*, in which the Court found that the key question on habeas review when a petitioner claims his arrest is unlawful because it was conducted without a previously existing warrant "is whether Petitioner is presently in custody in violation of the Constitution or laws or treaties of the Untied States, and not whether ICE's paperwork could have been more complete at the moment of arrest." No. 26-cv-7255, 2026 WL 2936515, at *3 (E.D. Pa. Sept. 30, 2026) (citations and internal punctuation omitted). The Court's October 5 Order was, therefore, intended to clarify the Petitioner's contentions on this point, as it would potentially be (and is, for the reasons discussed below), dispositive of a key portion of the legal analysis in this matter.

In response, counsel for Petitioner (though not the attorney who signed the Petition or the Supplement) unequivocally reported to the Court that the representations in Petitioner's Supplement were not attributable to Petitioner. Counsel represented to the Court that the investigation and representations to the Court in the Supplement focused solely on the existence of a warrant prior to Petitioner's arrest, despite the October 5 Order's clear language requesting clarification into whether a warrant had been issued concurrently with, or subsequent to, arrest. In this regard, counsel further represented that, despite the reference to a discussion with Petitioner in the Supplement, counsel did not ask Petitioner whether he had subsequently received a warrant, and Petitioner therefore did not make any false or misleading statements regarding the issuance of the warrant with the intent that they would be conveyed to the Court. Counsel at the hearing could not, however, explain why the Supplement was written as it was by co-counsel, or why co-counsel did not inquire whether a warrant had been issued subsequent to Petitioner's arrest.

## II. LEGAL STANDARD

Federal courts may issue writs of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner has the burden of demonstrating that the challenged detention is unlawful. *See Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *2 (May 14, 2026) (citing *Goins v. Brierly*, 464 F.2d 947, 949 (3d Cir. 1972) ("It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody.")).

## III. DISCUSSION

The discussion which follows closely conforms to our prior decision in *Zhuno-Livicura,* 2026 WL 2936515, in which this Court denied petitioner Zhuno-Livicura's petition for a writ of habeas corpus. That the Court can do so without doing a disservice to the arguments asserted in the Petition is possible only because the Petition is based on the same template as the petition that was used in the *Zhuno-Livicura* case. That analysis is repeated here, not in the interests of repetition, but to explain why the Court is troubled by the apparent use of a template, with only limited customization to the facts at bar. And those concerns are compounded by the representations contained in Petitioner's Supplement. The Court therefore repeats the analysis to contextualize the Court's concerns regarding the events in this case.

### A. Petitioner Has Failed to Exhaust His Administrative Remedies

Section 1226(a) provides: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, "[e]xcept as provided in subsection (c) [relating to mandatory detention] and pending such decision, the Attorney General (1) may continue to detain the arrested alien." *Id.* If the alien is not subject to mandatory detention under 8 U.S.C. § 1226(c),

the DHS district director makes an initial custody determination. *See* 8 C.F.R. § 236.1(c). Thereafter, if the alien is not subject to a final order of removal, the alien may seek release by requesting a bond hearing before an immigration judge, with appeal to the Board of Immigration Appeals ("BIA"). *Id.* §§ 236.1(d), 1003.19.

"In general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *See Ubaid*, 2026 WL 1346670, at * 3 (quoting *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam)); *see also Beradze v. Jamison*, No. 2:26-cv-07111, 2026 WL 2859721, at *1 (E.D. Pa. Sept. 23, 2026), citing *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (explaining the Third Circuit has "consistently applied an exhaustion requirement to claims brought under § 2241").

"Requiring exhaustion is 'particularly important in the resolution of cases involving constitutional issues,' as here." *Piatukho v. Jamison*, No. 2:26-cv-6413, 2026 WL 2719267, at *3 (E.D. Pa. Sept. 15, 2026) (quoting *Republic Indus. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982) ("If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication. In this way, exhaustion furthers the concept of judicial restraint . . . .")).

Here, it is undisputed that Petitioner has not exhausted his administrative remedies. A bond hearing under Section 1226(a) fully meets constitutional requirements for the reasons discussed in greater detail below, and would provide Petitioner with an individualized review of his detention. Accordingly, the Petition is denied for failure to exhaust his administrative remedies.

**B. Petitioner is Not Entitled to Relief on Substantive Due Process Grounds**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const., Amend. 5, cl. 4. In addition

to those rights set forth in the Constitution, the Due Process Clause of the Fifth Amendment has been interpreted to "specially protect[] those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if it were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted). In evaluating whether a claimed unenumerated right meets this standard, courts "engage[] in a careful analysis of the history of the right at issue," and "[h]istorical inquiries of this nature are essential whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 238-39 (2022); *see also Glucksberg*, 521 U.S. at 711-16 (surveying "over 700 years" of "Anglo-American common-law tradition").

"'Substantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)); *Glucksberg*, 521 U.S. at 720 (explaining necessity for the "utmost care" "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of the judiciary) (internal quotation marks and citation omitted).

Here, Petitioner asserts a liberty interest in being free from detention, but cites a series of cases involving procedural due process, including *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). ECF No. 1, ¶¶ 64-68; *see also Beradze*, 2026 WL 2859721, at * 2 ("[I]t is unclear why Petitioner characterizes the due process protections recognized in *Jackson v. Indiana* as 'substantive.'") (citing *Foucha v. Louisiana*, 504 U.S. 71, 79-80 (1992) (characterizing *Jackson* as recognizing

*procedural* protections, distinct from a discussion of substantive due process)). Accordingly, the Court will turn to Petitioner's procedural due process arguments.

**C. A Bond Hearing Under Section 1226(a) Satisfies Procedural Due Process**

Petitioner contends that the availability of a bond hearing pursuant to 8 U.S.C. § 1226(a) is inadequate as a matter of procedural due process. ECF No. 1, ¶¶ 55-63. This Court disagrees.

When evaluating the process due to noncitizens under the Due Process Clause, courts consider:

> (1) [T]he private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Buele Morocho v. Warden Phila. FDC*, Nos. 26-cv-1150, 26-cv-1454, __ F.4th __, 2026 WL 2546223, at * 9 (3d Cir. 2026) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Turning first to the private interest factor, Petitioner has a clear interest in being free from physical restraint. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Buele Morocho*, 2026 WL 2546223, at * 9 (explaining "[f]reedom from imprisonment – from custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects," and recognizing the particular interests of "noncitizens who have lived in the United States for extended periods of time with no criminal records") (citations omitted).

As to the second factor, the risk of erroneous deprivation, however, "Petitioner has administrative processes available to him in the form of an individualized bond hearing and the right to appeal a bond decision. These procedures protect against the risk of an erroneous deprivation of his liberty interest." *Beradze*, 2026 WL 2859721, at * 2. Thus, this factor favors Respondents.

The final factor similarly favors Respondents. The Government has a "legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings[.]" *Id.* (quoting *Buele Morocho*, 2026 WL 2546223, at *10). Whether this generalized interest is applicable on the facts of Petitioner's case is not dispositive – that is a matter for an individualized determination through a bond hearing under Section 1226(a).

Accordingly, the Court finds that the *Mathews* factors weigh in favor of concluding that an individualized bond hearing, with appeal to the BIA, is constitutionally sufficient, and Petitioner's procedural due process rights can be protected by requiring Petitioner to exhaust his administrative remedies.

**D. A Habeas Proceeding is Not the Appropriate Vehicle for Petitioner to Dispute the Legality of His Initial Arrest**

Petitioner's argument that his arrest was unlawful because it was conducted without a previously existing warrant, and because he contends that the government did not follow its own procedures regarding the issuance of warrants, is also unavailing. *See* ECF No. 1, ¶¶ 52-54 (claiming violations of the Immigration and Nationality Act), and ¶¶ 69-72 (claiming violations of the *Accardi* doctrine). The relevant question on habeas review "is whether Petitioner is presently 'in custody in violation of the Constitution or laws or treaties of the United States,'" and not "whether ICE's paperwork could have been more complete at the moment of arrest." *See Par v. Jamison*, No. 26-3504, 2026 WL 1603299, at *4 (E.D. Pa. June 4, 2026) (Perez, J.). In other words, "[t]he Court will not order Petitioner's release based on an alleged arrest defect, when Petitioner's custody is now lawful." *See Cocha Cocha v. Tsoukaris*, No. 26-cv-9857, 2026 WL 2806733, at *3 (D.N.J. Sept. 18, 2026); *cf. Frisbie v. Collins*, 342 U.S. 519, 522 (1952) (finding that irregularities in the manner of a criminal defendant's arrest do not preclude ensuing prosecution). Here, a warrant was issued for Petitioner's arrest, and he is currently in custody pursuant to that

warrant. The Government also issued Petitioner a Notice to Appear, and Petitioner received a custody determination and was offered the opportunity to request a bond hearing before an immigration judge under 8 U.S.C. § 1226(a). *See* ECF Nos 7-1 (Form I/862, Notice to Appear); ECF No. 7-3 (Warrant for Arrest of Alien); ECF No. 7-4 (Notice of Custody Determination); *see also* ECF No. 11, at p. 6 (Brown Decl.), ¶¶ 5-6. Accordingly, Petitioner's present custody is lawful, regardless of whether the warrant was issued before, after, or in parallel with his arrest, and Petitioner's arguments fail as a matter of law in this respect as well.

**E. Concerns Regarding Counsel's Representations to the Court and Order to Show Cause**

As noted above, the Petition filed by Petitioner's counsel appears to be a standardized form with the majority of the paragraphs matching word for word with other petitions filed before this Court. Concerningly, the use of a form petition appears to have been incautious in this instance. While minor in substance, the fact that instructions appear to remain in text, along with an erroneous citation, suggests the Petition was prepared without careful attention to detail. ECF No. 1, at p. 21.[2] The representations to the Court in Petitioner's Supplement in response to the Court's October 5 Order are, however, more troubling.

The Petition alleged that the Petitioner was not shown a warrant at the time of his arrest, and did not specify or acknowledge that a warrant was provided any time thereafter. ECF No. 1, at 1. Framing this case as one in which detention occurred without a warrant at all, as opposed to a case in which a contemporaneous warrant was issued, raised the prospect that this case could present issues of a different nature than those immigration-related habeas cases on which this Court

---

[2] The Court further notes that the numbering of the counts in the Petition is flawed, jumping from Count Three (Substantive Due Process) to Count Five (*Accardi* Doctrine). *See* ECF No. 1, pp. 18, 20.

has previously ruled. Accordingly, the Court's Order was intended to develop the factual record necessary for the Court to evaluate the nature of the claim – and to determine whether a response from the Government and a hearing would ultimately be necessary. *See* 28 U.S.C. § 2243 ("A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.") (emphasis added).

The response contained in the Supplement – that "[i]n speaking with Petitioner at the Federal Detention Center, undersigned counsel's colleague confirmed Petitioner did not have in his possession any warrant or other immigration paperwork. Without the official documents, undersigned counsel is unable to say with certainty, but it seems a warrant, if any, was issued after Petitioner was detained" – did nothing to clarify the situation, and instead persisted in raising the prospect that no warrant for Petitioner's arrest may have ever been issued, when in fact one had. *See* ECF No. 3, ¶ 1. And this representation in the Supplement was particularly troubling because it referenced a discussion with the Petitioner, when in fact counsel at the hearing represented to the Court that Petitioner was not asked whether Petitioner had received a warrant subsequent to his arrest.

Under Fed. R. Civ. P. 11(b)(3), attorneys and parties who present filings to federal courts certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." "'Rule 11 requires only negligence, not bad faith' for a court to find that an attorney failed to meet their obligations under the rule." *Bunce v. Visual Technology Innovations*, Civil No. 23-cv-1740, 2026 WL 1082135, at * 2 (E.D. Pa. Apr. 20, 2026) (quoting *Wharton v.*

*Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024)). "In other words, courts can sanction lawyers for what they should have known, not just what they knew." *Id.* (quoting *Wharton*, 95 F.4th at 148).

"Rule 11 also imposes an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims. Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—*or after reasonable investigation should have known*—are false or wholly unsupported." *Wharton*, 95 F.4th at 148 (quoting *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023)) (emphasis original). The duty of candor extends beyond prohibiting outright lies; it also prohibits statements "that are literally true but actually misleading." *In re Taylor*, 655 F.3d 274, 283 (3d Cir. 2011). Furthermore, the duty of candor "means steering clear of 'half-truths, inconsistencies, mischaracterizations, exaggerations, omissions, evasions, and failures to correct known misimpressions created by [the lawyers'] own conduct.'" *Wharton*, 95 F.4th at 148 (quoting *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 511 (4th Cir. 2018)).

In parallel, Pennsylvania Rule of Professional Conduct 3.3(a) provides: "A lawyer shall not knowingly … (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

Upon consideration of the Petitioner's Supplement, and the representations made by counsel at the October 16, 2026, hearing, the Court finds that the representations regarding the existence of a warrant in response to this Court's October 5 Order are not attributable to the Petitioner and accordingly the Court need not make any findings regarding the Petitioner's credibility or the truthfulness of Petitioner's statements to the Court, which are not in question. The Court, however, remains concerned about the factual representations made to the Court by Petitioner's counsel in the Petition and the Supplement. While differing views on the development

of the laws in this area are to be expected and are not unreasonable, misleading factual representations to the Court – particularly in response to direct orders – are not permissible and violate Rule 11. This Court's October 5 Order required Petitioner to state "if a warrant was issued for the Petitioner concurrently with or subsequently to the Petitioner's detention." ECF No. 2 at 1. Despite this clear order, and the fact that the Petitioner had been processed and received the paperwork associated with his arrest including a warrant, the record reflects that counsel (or co-counsel) did not ask the Petitioner whether a warrant was subsequently issued, and counsel who signed the Supplement provided an answer that was, at best, cavalier and misleading, and at worst, deceptive – "it seems a warrant, **if any,** was issued after Petitioner was detained." ECF No. 3, at 1 (emphasis added).

Accordingly, and pursuant to Fed. R. Civ. P. 11(c)(3), Petitioner's counsel Kimberly Tomczak, Esq., is ordered to show cause on or before October 30, 2026, why the statements in Petitioner's Supplement that, "[i]n speaking with petitioner at the Federal Detention Center, undersigned counsel's colleague confirmed Petitioner did not have in his possession any warrant or other immigration paperwork. Without the official documents, undersigned counsel is unable to say with certainty, but it seems a warrant, **if any,** was issued after Petitioner was detained," did not violate Rule 11(b)(3) and/or Pa. R. P. C. 3.3(a)(1). ECF No. 3, at 1 (emphasis added). Attorney Tomczak shall further show cause, by that same date, why the allegations contained in the Petition regarding the absence of a warrant were not misleading, ECF No. 1, at ¶¶ 1, 4, 19, 59, 61, independently and in conjunction with the representations contained in Petitioner's Supplement, and did not therefore violate Rule 11(b)(3) and/or Pa. R. P. C. 3.3(a)(1).

## IV. CONCLUSION

For the foregoing reasons, the Petition is DENIED, and an appropriate Order will issue, along with an Order to Show Cause directed to Kimberley Tomczak, Esq.

Dated: October 20, 2026.

/s/ Antonio M. Pozos
**ANTONIO M. POZOS, J.**